## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **RICHARD PETER STAVRAKIS**, | Case No. 6:12-cv-01929-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN**, Commissioner of the Social Security Administration, | |
| Defendant. | |

Linda S. Ziskin, Ziskin Law Office, P.O. Box 753833, Las Vegas, NV 80136; Richard A. Sly, 209 S.W. Oak Street, Suite 102, Portland, OR 97204. Of Attorneys for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, U.S. Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, Oregon 97204; David J. Burnett and Erin F. Highland, Special Assistant United States Attorneys, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, Washington 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Richard Peter Stavrakis seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for supplemental social security income. For the reasons discussed below, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

If "the evidence is susceptible to more than one rational interpretation," the Court must uphold the Commissioner's conclusion. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and the Court may not substitute its judgment for that of the Commissioner. *See Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). A reviewing court, however, "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The court may review "only the reasons provided by the" Administrative Law Judge ("ALJ") "in the disability determination and may not affirm the ALJ on a ground upon which [the ALJ] did not rely." *Id.*; *see also Bray*, 554 F.3d at 1225.

## BACKGROUND

### A.  The Application

Mr. Stavrakis was born on March 2, 1965, and is 49 years old. AR 32. He protectively filed an application for supplemental social security income on October 28, 2009, alleging disability beginning July 1, 1991. AR 24. He alleges disability due to cognitive impairment.

AR 136, 187. The claim was denied initially on March 31, 2010, and upon reconsideration on

July 16, 2010; thereafter, Mr. Stavrakis filed a written request for a hearing before an ALJ.

AR 24. After an administrative hearing held on July 6, 2011, the ALJ ruled that Mr. Stavrakis is

not disabled. AR 24, 33. The Appeals Council denied Mr. Stavrakis's request for review, making

the ALJ's decision the final decision of the Commissioner. AR 1. Mr. Stavrakis now seeks

judicial review of that decision, requesting that the Court find him disabled or, alternatively,

remand this case for further proceedings. Pl.'s Br., ECF 25 at 13.

**B. The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§ 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive.

20 C.F.R. § 404.1520(a)(4). The five-step sequential process asks the following series of

questions:

> 1. Is the claimant performing "substantial gainful activity?"
> 20 C.F.R. § 404.1520(a)(4)(i). This activity is work involving
> significant mental or physical duties done or intended to be done
> for pay or profit. 20 C.F.R. § 404.1510. If the claimant is
> performing such work, she is not disabled within the meaning of
> the Act. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not
> performing substantial gainful activity, the analysis proceeds to
> step two.
>
> 2. Is the claimant's impairment "severe" under the
> Commissioner's regulations? 20 C.F.R. § 404.1520(a)(4)(ii).
> Unless expected to result in death, an impairment is "severe" if it
> significantly limits the claimant's physical or mental ability to do

basic work activities. 20 C.F.R. § 404.1521(a). This impairment
must have lasted or must be expected to last for a continuous
period of at least 12 months. 20 C.F.R. § 404.1509. If the claimant
does not have a severe impairment, the analysis ends. 20 C.F.R.
§ 404.1520(a)(4)(ii). If the claimant has a severe impairment, the
analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one
or more of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P,
appx. 1? If so, then the claimant is disabled. 20 C.F.R.
§ 404.1520(a)(4)(iii). If the impairment does not meet or equal one
or more of the listed impairments, the analysis proceeds beyond
step three. At that point, the ALJ must evaluate medical and other
relevant evidence to assess and determine the claimant's "residual
functional capacity" ("RFC"). 20 C.F.R. § 404.1520(e). This is an
assessment of work-related activities that the claimant may still
perform on a regulAR and continuing basis, despite any limitations
imposed by his or her impairments. *Id.* After the ALJ determines
the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work"
with this RFC assessment? If so, then the claimant is not disabled.
20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform his
or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and
work experience, is the claimant able to make an adjustment to
other work that exists in significant numbers in the national
economy? If so, then the claimant is not disabled. 20 C.F.R.
§ 404.1520(a)(4)(v); 404.1560(c). If the claimant cannot perform
such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner bears the burden of

proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the

claimant can perform other work that exists in significant numbers in the national economy,

"taking into consideration the claimant's [RFC], age, education, and work experience." *Id.*;

*see also* 20 C.F.R. § 404.1566 (describing "work which exists in the national economy"). If the

Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v).

PAGE 4 – OPINION AND ORDER

If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ performed the sequential analysis in his July 14, 2011 decision. AR 24-33. At step one, the ALJ found that Mr. Stavrakis had not engaged in substantial gainful activity after October 28, 2009, the date he filed his application. AR 26. At step two, the ALJ concluded that Mr. Stavrakis's traumatic brain injury due to anoxia, borderline intellectual functioning, and polysubstance abuse were severe impairments. *Id.* At step three, the ALJ ruled that Mr. Stavrakis did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in the regulations. AR 27.

The ALJ next assessed Mr. Stavrakis's RFC. The ALJ found that Mr. Stavrakis retained the capacity to perform a full range of work at all exertional levels but restricted him to work that: does not require written instructions or written reports; does not require public interaction except for casual and superficial contact; and is simple, routine work in a routine work environment. AR 28. At step four, the ALJ determined that Mr. Stavrakis had no past relevant work. AR 32. At step five, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Mr. Stavrakis could perform jobs that existed in significant numbers in the national economy. AR 32-33. Thus, the ALJ ruled that Mr. Stavrakis was not disabled. AR 33.

## DISCUSSION

Mr. Stavrakis argues that the ALJ erred by: (1) not finding that his conditions meet or equal the requirements of Listing 12.02C; (2) not finding that his conditions meet or equal the requirements of Listing 12.05C; and (3) ignoring the Psychiatric Review Technique Form

(PRTF), prepared on June 18, 2009 by, Dr. Dorothy Anderson, PhD ("2009 PRTF") when

developing the RFC and consulting the VE. The Court addresses each of these issues in turn.

**A. Listing 12.02C: Organic Mental Disorders**

Mr. Stavrakis argues that the ALJ did not adequately consider whether his cognitive

impairment meets or equals Listing 12.02C. Pl.'s Br., ECF 25 at 9-10. A claimant satisfies

Listing 12.02C by demonstrating a

> [m]edically documented history of a chronic organic mental
> disorder of at least 2 years' duration that has caused more than a
> minimal limitation of ability to do basic work activities, with
> symptoms or signs currently attenuated by medication or
> psychological support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended
> duration; or
>
> 2. A residual disease process that has resulted in such marginal
> adjustment that even a minimal increase in mental demands or
> change in the environment would be predicted to cause the
> individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside
> a highly supportive living arrangement, with an indication of
> continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, app. 1 § 12.02.

An ALJ must "explain adequately his evaluation of the combined effect of [a claimant's]

impairments, both severe and non-severe, and why they did not meet or equal any of those on the

Listing of Impairments." *Taylor v. Comm'r Soc. Sec. Admin.*, 659 F.3d 1228, 1233

(9th Cir. 2011) (citing *Marcia v. Sullivan*, 900 F.3d 172, 176 (9th Cir. 1990)). The ALJ found

that Mr. Stavrakis's "mental impairments, considered singly and in combination, do not meet or

medically equal the criteria of listings 12.02 and 12.09." AR 27. After explaining why

Mr. Stavrakis's cognitive impairments did not meet or equal the specific requirements of 12.02B,

the ALJ noted that he "also considered whether the 'paragraph C' criteria [were] satisfied" and found that "the evidence fail[ed] to establish the presence of the 'paragraph C' criteria." AR 28.

Although Listings 12.02B and 12.02C require a claimant to meet slightly different criteria, the substantial evidence cited in the ALJ's 12.02B analysis also supports the ALJ's conclusion that Mr. Stavrakis did not meet the 12.02C criteria. The ALJ cited evidence that Mr. Stavrakis had no extended episodes of decompensation, failing to meet the requirements of both 12.02B(4) and 12.02C(1). That evidence, in conjunction with evidence that Mr. Stavrakis had only mild difficulties in social functioning and moderate difficulties with regard to concentration, persistence, or pace under 12.02B(2)-(3), also supports a finding that Mr. Stavrakis does not meet the requirements of 12.02C(2) because a minimal change in mental demands or environment would not cause him to decompensate. Finally, evidence that Mr. Stavrakis had no restrictions in daily living under 12.02B(1) also supports a finding that Mr. Stavrakis did not meet the requirements of 12.02C(3) because he did not have a current history of inability to function outside of a highly supportive living arrangement. Thus, the ALJ did not err in his analysis of Listing 12.02C because the substantial evidence and adequate explanation supporting the ALJ's analysis of Listing 12.02B also supports his conclusion that Mr. Stavrakis's cognitive impairment did not meet or equal Listing 12.02C.

## B.  Listing 12.05C: Intellectual Disability

Mr. Stavrakis also argues that he meets the requirements of Listing 12.05C, which the ALJ did not address in his decision. Pl.'s Br., ECF 25 at 10-11. Although the ALJ stated in his decision that he "considered listing number 12.00," he only explained his reasoning for finding that Mr. Stavrakis did not meet or equal Listings 12.02 and 12.09 and did not address Listing 12.05C. AR 27-28; *see Marcia*, 900 F.2d at 176 ("the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments"). The structure of

Listing 12.05 is different from the other 12.00 listings. 20 C.F.R. Pt. 404, Subpt. P, app. 1 § 12.00. Thus, the ALJ's evaluation of the criteria for Listings 12.02 and 12.09 is not the same evaluation required for 12.05C. The Court finds that the ALJ erred by not adequately explaining why Mr. Stavrakis did not meet Listing 12.05C. This was not harmless error because, as discussed below, evidence in the record may support finding that Mr. Stavrakis's cognitive impairment meets Listing 12.05C and, therefore, that he is disabled. It is not clear from the current record, however, whether Mr. Stavrakis meets or equals Listing 12.05C. Thus, the ALJ "is in a better position than this court" to weigh the evidence and make that determination. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Accordingly, this case is remanded for the ALJ to determine whether Mr. Stavrakis's impairments meet or equal Listing 12.05C, in light of the standards discussed below.

To meet Listing 12.05C, claimant must establish: "(1) significantly subaverage general intellectual functioning with deficits in adaptive functioning with an onset before age 22; (2) a valid verbal, performance, or full scale IQ of 60 to 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Pedro v. Astrue*, 849 F. Supp. 2d 1006, 1011 (D. Or. 2011); *see* 20 C.F.R. Pt. 404, Subpt. P, app. 1 §§ 12.05, 12.05C; *see also Brooks v. Barnhart*, 167 F. App'x 598, 599-600 (9th Cir. 2006) (listing the same elements as in *Pedro*). Evidence in the record suggests that Mr. Stavrakis's impairments might satisfy these elements.

### 1. Onset Prior to Age 22

The introductory paragraph of Listing 12.05 requires Mr. Stavrakis to demonstrate that he had "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." 20 C.F.R. Pt. 404, Subpt. P, app. 1 § 12.05. The *Diagnostic and Statistical Manual of Mental* Disorders describes deficits in

adaptive functioning as "how well a person meets community standards of personal independence and social responsibility, in comparison to others of similar age and socioeconomic background." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 37 (5th ed. 2013).

This Court, joining other judges in this District, has found "that a valid adult IQ score can be reflective of an impairment that manifested during the claimant's developmental period." *Brooks v. Astrue*, 2012 WL 4739533, at *6 (D. Or. Oct. 3, 2012); *see also Pedro*, 849 F. Supp. at 1011-12. Thus, if the ALJ determines that Mr. Stavrakis has a valid IQ score of 60 through 70, that score may be considered evidence of significantly subaverage general intellectual functioning beginning before age 22.

Circumstantial evidence such as "attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing or math, and low skilled work history" can also support finding significantly subaverage general intellectual functioning with deficits in adaptive functioning beginning before age 22. *Pedro*, 849 F. Supp. 2d at 1012 (quoting *Campbell v. Astrue*, 2011 WL 444783, at *17 (E.D. Cal. Feb. 8, 2011)) (quotation marks omitted); *see Brooks*, 2012 WL 4739533, at *6. Mr. Stavrakis was born with neurological defects due to complications during his birth. AR 51, 53, 260, 266. He began receiving Social Security benefits when he was approximately nine years old and stopped receiving benefits when he was incarcerated in his early adult years. AR 50-51, 53. Throughout primary and secondary school Mr. Stavrakis was enrolled in special education. AR 48, 54, 259-60, 267, 274, 319. He dropped out of school in the ninth grade. AR 48, 54, 259-60, 266, 274. While incarcerated, Mr. Stavrakis tried to earn his GED[®][1] but could not improve his basic reading and writing skills

---

[1] General Educational Development.

sufficiently. AR 52. He received low scores on reading and math tests, and, over the past 20

years, repeatedly reported struggling with reading and writing. AR 48, 139, 263, 267, 273, 275.

Mr. Stavrakis has a low skilled work history. AR 137 (bagging groceries), 176-77 (janitorial

work), 260 (yard maintenance), 267 (construction and housekeeping).

    Other courts have found that similar circumstantial evidence demonstrated significantly

subaverage general intellectual functioning with deficits in adaptive functioning initially

manifested beginning before age 22.[2] On remand, the ALJ should consider whether

Mr. Stavrakis's IQ scores and the circumstantial evidence support finding onset of his

intellectual impairment with deficits in adaptive functioning before age 22.

### 2. Valid IQ Scores

The ALJ must also determine on remand whether the Mr. Stavrakis has "[a] valid verbal,

performance, or full scale IQ of 60 through 70." 20 C.F.R. Pt. 404, Subpt. P., app. 1 § 12.05C.

"In cases where more than one IQ is customarily derived from the test administered, e.g., where

verbal, performance, and full scale IQs are provided in the Weschler series,[3] [the] lowest of these

[is used] in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P, app.1 § 12.00.

---

[2] *See, e.g.*, *Pedro*, 849 F. Supp. 2d at 1012 (claimant was in special education classes, graduated from high school and could read the newspaper, but otherwise struggled with reading and writing, and had a low skill work history); *Brooks*, 2012 WL 4739533, at *6-7 (claimant attended three years of special education class prior to high school and unsuccessfully attempted to earn his GED); *Forsythe v. Astrue*, 2012 WL 217751, at *7 (E.D. Cal. Jan. 24, 2012) (claimant attended special education classes, was held back in first grade, and performed poorly in math and reading); *Canales v. Astrue*, 2011 WL 4704228, at *6 (D. Or. Oct. 4, 2011) (claimant "cycled in and out of special education classes" and "occasionally obtain[ed] a passing grade, or better," but failed the majority of her classes).

[3] Weschler Adult Intelligence Scale.

The record includes three evaluations of Mr. Stavrakis's IQ when he was 33,[4] 40, and 44 years old. AR 260, 274, 322. Only the most recent IQ scores are low enough to satisfy Listing 12.05C. In 2009, Dr. Jane Starbird, PhD, administered the Wechsler Adult Intelligence Scale III to Mr. Stavrakis, who received a verbal IQ score of 67, a performance IQ score of 75, and a full scale IQ score of 68. AR 322. Dr. Starbird stated that "[t]he results of testing are considered to be a valid reflection of [Mr. Stavrakis's] current functioning." *Id.* On remand, the ALJ should analyze whether Mr. Stavrakis's 2009 verbal IQ score of 67 or full scale IQ score of 68 are valid and, therefore, satisfy the requirements of Listing 12.05C.

### 3.  An Additional Impairment

Lastly, the ALJ must determine whether Mr. Stavrakis has "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, app. 1 § 12.05C. This requirement is satisfied when an additional impairment's "effect on a claimant's ability to perform basic work activities is more than slight or minimal." *Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir. 1987) (citations omitted). If the ALJ finds that a claimant has another severe impairment at step two of the sequential analysis, then the requirement is satisfied. *See id.* at 633 n.3 (citing *Nieves v. Sec'y of Health & Human Servs.*, 775 F.2d 12, 14 (1st Cir. 1985)); *see also Pedro*, 849 F. Supp. 2d at 1015 (citing *Stokes v. Astrue*, 2011 WL 285224, at *10 (D. Or. Jan. 11, 2011), *adopted by* 2011 WL 284433 (D. Or. Jan. 24, 2011)) ("Cases interpreting *Fanning* and the . . . regulations conclude that if an ALJ finds an impairment to be 'severe' at step two of the disability analysis," then the requirement is met); *Brooks*, 2012 WL 4739533, at *8. The Ninth Circuit has emphasized, however, "that a

---

[4] The evaluator recorded Mr. Stavrakis's age as 34 years old in May 1998. AR 274. Based on Mr. Stavrakis's birthday of March 2, 1965, he was 33 years old at that time.

finding of severity is not required to satisfy the more than slight or minimal effect standard" under 12.05C. *Fanning*, 827 F.2d at 633 n.3.

In 2009, Dr. Anderson indicated that Mr. Stavrakis did not have a medically determinable impairment distinct from his cognitive impairment, thus failing this requirement of Listing 12.05C. AR 330. The ALJ found, however, that Mr. Stavrakis had three severe medically determinable impairments: "a traumatic brain injury due to anoxia; borderline intellectual functioning; and polysubstance abuse." AR 26. On remand, the ALJ should determine whether Mr. Stavrakis has an impairment distinct from his cognitive impairment that imposes on him a significant work-related limitation of function.

## C.  Dr. Anderson's Psychiatric Review Technique Form

Mr. Stavrakis argues that the ALJ erred by failing to address Dr. Anderson's 2009 PRTF, which found Mr. Stavrakis markedly limited in his ability to accept instruction and respond appropriately to criticism from supervisors.[5] Pl.'s Br., ECF 25 at 11-12; AR 341. He further argues that this error was prejudicial because the VE may have found Mr. Stavrakis unable to perform jobs existing in significant numbers in the national economy had the ALJ included Dr. Anderson's limitation in the RFC and vocational hypothetical. Pl.'s Br., ECF 25 at 11-12.

An ALJ does not need to discuss all of the evidence in the record, but must explain why "'significant probative evidence has been rejected.'" *Stark v. Shalala*, 886 F. Supp. 733, 735 (D. Or. 1995) (citing *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)). An ALJ may

---

[5] Mr. Stavrakis argues that he has a second marked limitation in his ability to function socially with authority figures, citing Dr. Anderson's note that he has "only marked limitations in the area of social functioning ONLY with authority figures." Pl.'s Br., ECF 25 at 11 (citing AR 338 (emphasis in original)). Because Dr. Anderson's note is evidence of her overall conclusion that Mr. Stavrakis was markedly limited in his ability to accept instructions and respond appropriately to criticism from supervisors, the Court analyzes it under that limitation, rather than as a separate limitation.

not ignore the opinions of State agency medical and psychological consultants regarding the

nature and severity of impairments and must explain the weight given to them. SSR

96-6P(1)-(2), 1996 WL 374180, at *1 (Jul. 2, 1996); [6] *see also* 20 C.F.R. §§ 404.1527(e)(2)(i),

416.927(e)(2)(i) (because state agency medical and psychological consultants are highly

qualified experts in Social Security disability evaluation, an ALJ must consider their findings as

opinion evidence); *Sawyer v. Astrue*, 303 F. App'x 453, 455 (9th Cir. 2008). Further, if the ALJ

poses a hypothetical to the VE that "does not reflect all of the claimant's limitations, then the

'expert's testimony has no evidentiary value to support a finding that the claimant can perform

jobs in the national economy.'" *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (quoting

*DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)).

      The ALJ gave all of the state agency opinions "some weight because they are consistent

with the record as a whole," but did not explain why he gave Dr. Anderson's 2009 PRTF only

some weight and did not discuss it in determining Mr. Stavrakis's RFC. AR 30. Further, the

vocational hypothetical did not restrict Mr. Stavrakis's co-worker or supervisor interaction,

conflicting with Dr. Anderson's 2009 PRTF. AR 59. The ALJ instead relied on a second PRTF,

prepared on March 26, 2010, by Dr. Kordell Kennmer, PsyD ("2010 PRTF") and affirmed by a

Mental Summary prepared on July 15, 2010, by Dr. Bill Hennings, PhD ("2010 Mental

Summary"). AR 30, 359, 362. The 2010 PRTF indicates that Mr. Stavrakis was not limited in his

ability to accept instruction and respond appropriately to criticism from supervisors, supporting

---

[6] "SSRs are binding on the Social Security Administration, but do not have the force of law and are not binding on courts. They are, however, entitled to some deference because they represent the Commissioner's interpretation of the agency's regulations." *Chamberlin v. Astrue*, 2013 WL 550514, at *12 (D. Or. Feb. 11, 2013) (citing *Holohan v. Massanari*, 246 F.3d 1199, 1202 n.1 (9th Cir. 2001)).

the ALJ's decision not to limit Mr. Stavrakis's co-worker or supervisor interaction in the RFC and vocational hypothetical. AR 359.

The ALJ erred by not sufficiently explaining why he gave Dr. Anderson's 2009 PRTF "some weight," and did not address it in developing the RFC and hypothetical for the VE. *See Stark*, 886 F. Supp. at 735; SSR 96-6P(1)-(2). This error was harmless, however, because the 2010 PRTF and 2010 Mental Summary cited by the ALJ are substantial evidence supporting the ultimate RFC determination that Mr. Stavrakis does not require restrictions on his co-worker or supervisor interaction. *See Matthews*, 10 F.3d at 681 (finding irrelevant whether an ALJ erred by not including all of a claimant's limitations in a hypothetical because other reliable evidence supported the ALJ's finding that the claimant could perform work). Because the Court is remanding this case on other grounds, the ALJ has the opportunity correct this error.

## CONCLUSION

The Commissioner's decision that Mr. Stavrakis is not disabled is **REVERSED** and this case is **REMANDED** for further proceedings as directed herein.

**IT IS SO ORDERED**.

DATED this 21st day of April, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge